C21-453 VC

# United States District Court

FOR THE

**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

BERNARD CURRAN and
RODRIGO SANTOS,

**FILED**

Nov 16 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

DEFENDANT(S).

---

## INDICTMENT

18 U.S.C. §§ 1343, 1346, and 1349 – Conspiracy to Commit Honest Services Wire Fraud;
18 U.S.C. §§ 1343 and 1346 – Honest Services Wire Fraud;
18 U.S.C. §§ 981(a)(1)(C) and 982; 28 U.S.C. § 2461 – Forfeiture Allegation

A true bill.

/s/ Grand Jury Foreperson
Foreman

Filed in open court this ___16th___ day of
November, 2021.

Ada Means
Clerk

Bail, $ __No Process__

Hon. Jacqueline Scott Corley

| | |
|---|---|
| 1 | STEPHANIE M. HINDS (CABN 154284) |
| 2 | Acting United States Attorney |

FILED

Nov 16 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BERNARD CURRAN and
RODRIGO SANTOS,

    Defendants.

CASE NO. CR21-453 VC

<u>VIOLATIONS</u>:
18 U.S.C. §§ 1343, 1346, and 1349 – Conspiracy to Commit Honest Services Wire Fraud;
18 U.S.C. §§ 1343 and 1346 – Honest Services Wire Fraud;
18 U.S.C. §§ 981(a)(1)(C) and 982; 28 U.S.C. § 2461 – Forfeiture Allegation

SAN FRANCISCO VENUE

I N D I C T M E N T

The Grand Jury charges:

<u>Introductory Allegations</u>

At all times relevant to this Indictment:

1.    Defendant Bernard CURRAN was a Senior Building Inspector at the San Francisco Department of Building Inspection ("DBI") where CURRAN had been employed since 2005.

2.    Defendant Rodrigo SANTOS was a California licensed civil and structural engineer operating primarily within the City and County of San Francisco, in the Northern District of California. SANTOS was the principal and co-founder of Santos & Urrutia Structural Engineers, Inc. ("S&U"), a structural engineering company based in San Francisco. SANTOS and his company provided

INDICTMENT

engineering services to clients and worked with project owners and contractors. This included work obtaining building permits from local municipalities, primarily San Francisco.

3. The San Francisco Golden Gate Rugby Association ("SFGGR") was a non-profit organization located in San Francisco, California. SFGGR was also referred to as the "San Francisco Golden Gate Rugby Club" or the "San Francisco Golden Gate Rugby Foundation." SFGGR ran adult and youth rugby leagues, among other rugby-related activities. CURRAN volunteered at SFGGR and one of his children previously participated in the club's activities.

4. SFGGR maintained a checking account at JPMorgan Chase Bank ("Chase"). Chase used data servers in either Michigan, Delaware, or New Jersey to process all checks deposited at ATMs, in bank branches, and via mobile devices.

<u>The San Francisco Department of Building Inspection</u>

5. DBI was the regulatory agency responsible for overseeing the enforcement of building, electrical, plumbing, disability access, and housing codes for commercial and residential buildings in the City and County of San Francisco. DBI was a public agency established to serve the City and County of San Francisco and the general public.

6. DBI's enforcement of building codes was often complex, and as such, most real property owners seeking to build or renovate in San Francisco relied on professionals to navigate the system on their behalf—usually a contractor, engineer, and/or permit expediter.

7. A property owner seeking to build or renovate in San Francisco was first required to obtain a permit from DBI. The permitting process was designed to ensure that the proposed project complied with all applicable codes and ordinances. To obtain a permit, the property owner ("sponsor") or the sponsor's representative (such as a contractor, engineer, or expediter) was required to apply for a permit by completing a permit application and submitting other necessary paperwork to DBI. If the project was sufficiently broad in scope, the sponsor was required to submit plans along with the permit application. If DBI determined that the application and plans complied with all applicable codes, DBI formally issued a building permit authorizing the project to commence according to the approved scope of work and plans. The project sponsor was not authorized to make any material changes to the property until DBI issued a building permit.

INDICTMENT 2

8.      Many projects required physical inspection by a DBI building inspector. The purpose of such inspections was to verify that the job had been completed according to the scope of work and plans authorized by the permit. A given project could require multiple inspections, depending on the scope of work. Normally, a DBI inspector with responsibility over the district where the property was located conducted the inspection. According to DBI procedures, line inspectors conducted most inspections while the senior building inspectors supervised line inspectors and weighed in on unusual issues, usually at the request of a line inspector. Under normal circumstances, it was unusual and inconsistent with DBI procedures for senior building inspectors to conduct inspections outside of their assigned districts. It was also unusual and inconsistent with DBI procedures for project sponsors to schedule inspections directly with a senior building inspector, rather than with the line inspector assigned to the district where the property was located.

9.      According to DBI practices and procedures, during a typical final inspection, a DBI inspector would go to the subject property with the project sponsor or the sponsor's representative, who would provide the inspector with the approved permit and plans. The inspector would examine the permit and plans to determine whether the work had been properly completed. If the work had been completed according to the approved plans, the inspector would "final" the permit and, if applicable, issue a certificate of final completion and occupancy ("CFC"), which gave the sponsor the legal authority to begin using the property for its approved purpose (*i.e.*, residential, office, retail, or other use). If the project had not been completed according to the permit and plans, the inspector would note the discrepancies and instruct the sponsor to remedy the issue before "finaling" the permit and issuing a CFC.

The Conspiracy and Scheme and Artifice to Defraud

10.     Beginning no later than May of 2017 and continuing until at least April of 2020, CURRAN and SANTOS engaged in a conspiracy and scheme and artifice to defraud ("scheme"), as described in more detail below.

11.     As part of the scheme, SANTOS knew that CURRAN supported and participated in activities at SFGGR. SANTOS asked his clients to make charitable contributions to SFGGR intending that those donations would influence CURRAN in the performance of his official duties. CURRAN

INDICTMENT                                              3

knew about the SFGGR donations from SANTOS' clients and understood that SANTOS had facilitated those donations. In exchange for the stream of donations flowing to SFGGR from SANTOS' clients, CURRAN gave SANTOS' clients favorable official treatment in his capacity as a senior DBI inspector.

12. As part of the scheme, SANTOS typically solicited donations from his clients by suggesting that a SFGGR donation from the client would influence an official action by CURRAN (*e.g.*, coming to the client's property for an inspection, issuing final inspection approval, or issuing a CFC). For instance, on January 20, 2019, SANTOS informed a client via text message "Drop off a check payable to Golden Gate Rugby Association for $500. This will smooth the inspection with the Senior DBI Inspector." When referencing SFGGR in communications with his clients, SANTOS typically attributed the organization to CURRAN by referring to SFGGR as "Bernie Curran's club" or "Bernie's favorite non-profit." SANTOS' regular practice was to direct his clients to write checks to SFGGR and deliver the checks to him. SANTOS then personally delivered the checks to CURRAN, ensuring that CURRAN knew that SANTOS had arranged the donation.

13. As part of the scheme, SANTOS took additional steps to ensure that CURRAN knew about the SFGGR donations from his clients and to ensure that CURRAN understood that the donations were intended to influence CURRAN's official actions. SANTOS often sent text messages to CURRAN stating that SANTOS' clients had written checks or made SFGGR donations in connection with specific projects. In several instances, SANTOS informed CURRAN about donations while also asking CURRAN to take an official action for the benefit of SANTOS' client. One such instance occurred on April 16, 2018, when SANTOS asked CURRAN via text message, "Can we schedule a final for [the 900 block of] South Van Ness? Client has given me his SF GG Rugby contribution." CURRAN agreed to inspect the property, and on April 20, 2018, CURRAN gave final inspection approval and issued a CFC for the property.

14. As part of the scheme, CURRAN provided corrupt benefits to SANTOS' clients. On at least two occasions, CURRAN gave final inspection approval for SANTOS' clients on projects where work had not been completed in accordance with the permit or plans. At a property on the 1300 block of Utah Street, CURRAN gave final approval for a permit that required the removal of two partition walls even though the project sponsor had not removed the walls. One of the sponsors of the project on

INDICTMENT 4

the 1300 block of Utah Street authorized a $1,500 check from a charitable gift fund to SFGGR. The sponsor sent SANTOS a screenshot confirming that the donation had been sent, but the check was never cashed because it was not deposited within the maximum time period allowed by the fund administrator's policy. At a separate property on the 1400 block of Church Street, CURRAN gave final approval for a permit that required the installation of fire safety sprinklers in an accessory dwelling unit even though the project sponsor never installed the sprinklers. The sponsor of the project on the 1400 block of Church Street made a $500 SFGGR donation via check, which SFGGR deposited into its Chase checking account on February 13, 2019. Both properties were located outside of CURRAN's assigned districts.

15. As part of the scheme, SANTOS' solicitations resulted in 13 clients writing checks to SFGGR, with one client writing two checks. SFGGR donations from SANTOS' clients totaled $9,600 from May 2017 through April 2019. CURRAN took at least one official action, including performing inspections and/or issuing a CFC, for all 13 of the donor-clients.

16. As part of the scheme, CURRAN and SANTOS concealed the donations from DBI management. Their concealment of the scheme allowed it to continue because if DBI had known about the SFGGR donations from SANTOS' clients, CURRAN would not have been permitted to inspect properties associated with SANTOS. Between January 2020 and April 2020, CURRAN further attempted to conceal the scheme by deleting text messages with SANTOS from his (CURRAN's) cell phone.

17. As part of the scheme, SFGGR donation checks from SANTOS' clients were deposited into SFGGR's Chase checking account in the Northern District of California.

COUNT ONE: (18 U.S.C. §§ 1343, 1346, and 1349 – Conspiracy to Commit Honest Services Wire Fraud)

18. The factual allegations in Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated herein as if set forth in full.

19. Starting at a date unknown to the Grand Jury, but by no later than May of 2017, and continuing until at least April of 2020 as to both defendants, in the Northern District of California and

elsewhere, the defendants,

BERNARD CURRAN
and
RODRIGO SANTOS,

did knowingly and willfully conspire and agree with each other to devise and participate in a material scheme and artifice to defraud and deprive the citizens of the City and County of San Francisco of their intangible right to the honest and faithful services of BERNARD CURRAN, through bribery and the concealment of material information, said scheme being carried out using interstate wire transmissions, all in violation of Title 18, United States Code, Sections 1343, 1346, and 1349.

COUNT TWO: (18 U.S.C. §§ 1343 and 1346 – Honest Services Wire Fraud)

20. The factual allegations in Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated herein as if set forth in full.

21. On or about February 13, 2019, in the Northern District of California and elsewhere, the defendants,

BERNARD CURRAN
and
RODRIGO SANTOS,

having knowingly, and with intent to defraud, devised, intended to devise, and participated in a material scheme and artifice to defraud and deprive the citizens of the City and County of San Francisco of their intangible right to the honest and faithful services of BERNARD CURRAN, through bribery and the concealment of material information, did transmit, and cause to be transmitted, a writing, sign, signal, picture, and sound by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice, specifically, the processing by Chase (through data processing servers located outside of California) of a $500 check from a SANTOS client deposited into SFGGR's Chase account in the Northern District of California, all in violation of Title 18, United States Code, Sections 1343 and 1346.

FORFEITURE ALLEGATION: (18 U.S.C. §§ 981(a)(1)(C) and 982; 28 U.S.C. § 2461)

22. Upon conviction of the offense alleged in Counts One and Two of this Indictment, the

INDICTMENT 6

defendants,

BERNARD CURRAN
and
RODRIGO SANTOS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a) and Title 28, United States Code, Section 2461, any property, real and personal, which constitutes or is derived from proceeds traceable to said violation, including but not limited to a forfeiture money judgment in the amount of such proceeds.

23. If, as a result of any act or omission of the defendant, any of said property

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property, which cannot be divided without difficulty;

the United States shall, pursuant to 21 U.S.C. § 853(p) (as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c)), seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

24. All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982; Title 28, United States Code, Section 2461(c); and Federal Rule of Criminal Procedure 32.2.

DATED: November 16, 2021                                    A TRUE BILL.

                                                                                /s/ Foreperson
                                                                       GRAND JURY FOREPERSON

STEPHANIE M. HINDS
Acting United States Attorney

   /s/ Casey Boome
CASEY BOOME
KYLE F. WALDINGER
Assistant United States Attorneys

INDICTMENT                                        7

# AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U...

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. §§ 1349, 1343 and 1346 - Honest Services Wire Fraud

18 U.S.C. §§ 1343 and 1346 - Honest Services Wire Fraud

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Maximum Penalties for Each Count: 20 years in prison; a fine equal to the greater of $250,000 or twice the gross gain or loss; 3 years of supervised release; $100 special assessment per count; restitution; forfeiture; possible deportation for non-citizens.

Name of District Court, and...
NORTHERN DISTR...
SAN FRANC...

FILED
Nov 16 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

### DEFENDANT - U.S

Bernard Curran

DISTRICT COURT NUMBER

CR21-453 VC

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

FBI Special Agent Allison Lopez

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.

☒ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.
3-21-mj-71315-M...

Name and Office of Person Furnishing Information on this form: Stephanie M. Hinds
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Casey Boome

### DEFENDANT

**IS NOT IN CUSTODY**
1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☒ Is on Bail or Release from (show District)
   NDCA (3-21-mj-71315-MAG)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction    ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No   If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS ☒ NO PROCESS* ☐ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:    Before Judge:

Comments:

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. §§ 1349, 1343 and 1346 - Honest Services Wire Fraud

18 U.S.C. §§ 1343 and 1346 - Honest Services Wire Fraud

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Maximum Penalties for Each Count: 20 years in prison; a fine equal to the greater of $250,000 or twice the gross gain or loss; 3 years of supervised release; $100 special assessment per count; restitution; forfeiture; possible deportation for non-citizens.

Name of District Court: NORTHERN / SAN F...

FILED
Nov 16 2021
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

**DEFENDANT - U.S**

▶ Rodrigo Santos

DISTRICT COURT NUMBER

CR21-453 VC

**DEFENDANT**

**IS NOT IN CUSTODY**
1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☒ Is on Bail or Release from (show District)
   NDCA (CR 21-268-SI) and (3-21-mj-71315-MAG)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction    ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No   If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
FBI Special Agent Allison Lopez

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.

☒ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.
3-21-mj-71315-M...

Name and Office of Person Furnishing Information on this form   Stephanie M. Hinds
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Casey Boome

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS ☒ NO PROCESS* ☐ WARRANT   Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:   Before Judge:

Comments: