EXHIBIT A

PHILIP J. KEARNEY - 114978
        PKearney@mpbf.com
THOMAS P. MAZZUCCO - 139758
        TMazzucco@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
580 California Street, Suite 1100
San Francisco, CA  94104-1001
Telephone:     (415) 788-1900
Facsimile:     (415) 393-8087

Attorneys for Defendant
BERNARD CURRAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD CURRAN,<br><br>Defendants. | Case No.: 3:21-cr-00453-SI<br><br>**DECLARATION OF RETIRED DEPUTY DIRECTOR EDWARD SWEENEY IN SUPPORT OF DEFENSE SUPPLEMENTAL SENTENCING MEMORANDUM RE RESTITUTION** |

I, Edward Sweeney, declare:

1.      As noted previously, I am a Retired Deputy Director of the City and County of San Francisco Department of Building Inspection ("DBI"). I make this supplemental declaration in support of Defendant Bernard Curran's Sentencing Memorandum; specifically in regard to the government's requested restitution award for its internal audit ("Audit"). The facts set forth herein are true based on my own knowledge except where stated to be on information and belief, and as to those I believe such facts to be true.

2.      I was employed at DBI in various capacities during an approximate twenty-one-year period from February 1999 to December 2020. During my career at DBI I served as both a Building

- 1 -

1 Inspector and Senior Building Inspector before becoming Deputy Director of the Agency. I served as a
2 DBI Deputy Director for fourteen years. Before my career at DBI, I worked as a union carpenter in San
3 Francisco from 1974-1999.

4      3.      As noted previously, during my term as a DBI Deputy Director, I worked with and/or
5 supervised both Bernard Curran and Patrick O'Riordan. I can say that it was well-known at DBI that
6 there was a degree of tension between the two men; they certainly would not have been considered
7 friends. I believe the tension was based in part on a degree of jealousy harbored by Mr. O'Riordan
8 towards Mr. Curran because Mr. Curran—having worked in the industry for decades—was well-liked
9 by contractors in San Francisco. At a minimum, the men were very different, with Mr. Curran being
10 friendly and outgoing and Mr. O'Riordan often working with his door closed.

11      The Scope and Goals of the Audit

12      4.      In preparation for this supplemental declaration I reviewed Mr. O'Riordan's March 17,
13 2023, letter to the Court ("Letter" attached as Exhibit 1 to the Declaration), and supplemental materials
14 supplied to Mr. Curran through counsel on or about August 8, 2023, and thereafter. These
15 supplemental materials included four attachments: 1) An excel spreadsheet labelled in relevant part
16 "Inspector_hrs" purporting to be a list of San Francisco properties with date and hours (apparently
17 rounded generally to the nearest half hour) of internal audit time spent by DBI employees during the
18 Audit; 2) Another excel spreadsheet labelled in relevant part "Time and Cost Calcs" listing in
19 summary fashion the hours and cost of the DBI personnel spent on the Audit; 3) a power point slide
20 deck entitled "DBI Internal Audit Update;" and 4) a list of twenty-four "Internal Audit Docs"
21 apparently containing "Notices of Violation" ("NOV") issued as a result of the Audit. The three initial
22 docs were labelled with the date July 24, 2023, indicating they were current as of that date. I have also
23 reviewed a separate letter field with the court this week—on or about October 2, 2013—by the City's
24 Attorney's Office which clarifies and reduces some of the initial demands made in the Letter.

25      5.      The first excel spreadsheet noted that property inspections began January 5, 2022, and
26 extended through (as noted) July 2023. The time spent on these inspections ranged from 0.5 to 8 hours
27 per property with the vast majority being in the 1–4-hour range.

28      6.      At the outset, Mr. O'Riordan's characterization in the Letter of the manpower involved

in DBI's Audit is extremely inaccurate. In the Letter, Mr. O'Riordan stated: "To perform this thorough review of records for the Audit, including determining the scope and extent of Santos and Curran projects, **DBI dedicated a team of thirteen full-time building inspectors and administrative personnel.**" (emphasis added) Based on the hours reported as of July 24, 2023, it appears that no employee worked full time on the Audit. (*See* Exhibit 2, "Internal Audit Time and Cost Calculations). Two employees (Trevor Bryne and Fergal Clancy) worked less than one year's full time on the project at 1545.50 and 1389.25[1]  hours respectively. The rest of the DBI employees listed worked between 2 and 434.5 hours with six working 100 hours or less. Further, and based on their stated job classifications, only five building inspectors worked on the audit, three of whom were clearly working only part time (one working just 74 hours in total).

7.     The Audit identified 5,445 properties that demanded additional scrutiny. These properties were divided into three "tiers:" Tier 1 consisting of 119 properties that were worked on by both Mr. Curran and Mr. Santos; Tier 2 consisting of 158 properties worked on be either Mr. Curran or Mr. Santos in a "slope or seismic hazard zone;" and Tier 3 consisted of 5,168 properties "associated with" either Mr. Curran or Mr. Santos outside of a slope or seismic hazard zone. According to documents supplied by DBI, the review of Tiers 1 and 2 have been completed at a cost of $335,391.94.

8.     Beyond this somewhat random 'tiered' approach, the stated scope of the Audit is significantly overbroad. In his Letter, Mr. O'Riordan noted that "Inspector Curran had at times performed plan review…"; and that "The Audit team members searched DBI's own data and records for evidence of revision of permits; insufficient plan checks; permits requiring special scrutiny (e.g. excavation, structural, seismic, sprinklers on separate permits, etc.); slope protection reviews; missing trade permits; missing inspections; missing special inspections; missing addenda; and complaints not investigated." (*See* Exh. 1, p. 1). However, many of these described areas of review had nothing to do with Mr. Curran. For instance, "plan reviews" and plan checks are performed by a completely different Division of DBI ("Permit Services") than Mr. Curran's "Inspection Services." Potential oversights

---

[1]Presumably during the reported audit period of January 5, 2022, through July 2023.

committed by DBI engineers or personnel in the Permit Services Division should not be attributed to Mr. Curran, they are physically on a different floor and perform a different function.

9. Further, the stated basis of the Audit ("to ensure the safety of occupants residing or working in the structures" based on Mr. Curran's "illegal conduct," (*Id*.) is inaccurate and/or simplistic. Any San Francisco Building project of consequence (beyond simple bath or kitchen remodels) that requires an engineer or architect is typically highly collaborative in nature with several levels of independent and over-lapping review. Projects such as most of those described in Tiers 1 & 2 requiring excavation, structural change, or seismic plans are drawn by engineers and submitted (as noted) to more engineers in the Plan Check Department (rather than the Building Inspection Department) of DBI. As will be highlighted below, adherence to these plans in the field is ensured by special third-party inspectors, with Building Department personnel such as Mr. Curran taking only a minor or supporting role. As will be noted below, Mr. Curran was typically one of only a large number of inspectors to review work on any given job. Important systems such as plumbing and electrical were always performed by other inspectors. The chances of Mr. Curran's work—which was exemplary in my experience—negatively affecting the safety of San Franciscans is a complete stretch.

10. Likewise, the Letter's stated need for the Audit Team to search DBI records to assess "slope protection reviews" is non-sensical; such reviews are not conducted by DBI building inspectors, they are the subject of the City's *Slope and Seismic Hazard Protection Act* ("SSPA" or "Act")).[2] The purpose of the SSPA is to clarify the permit process for projects subject to the Act; that is properties in a seismic hazard zone or with an average slope of 4 horizontal to 1 vertical. The SSPA mandates a separate permit submittal process, checklist, and review committee, all under the supervision of a DBI Plan Review Engineer. The Act requires third party peer review by a geotechnical engineer and the approval of a structural advisory committee that has a concurrent mandate to provide special reports to DBI Plan Engineers. None of this process has anything to do with Mr. Curran, who is not an engineer. Based on my knowledge of DBI, charging him for a review of these documents does seem appropriate based on the stated goals of the Audit.

---

[2] https://sfdbi.org/sites/default/files/IS%20S-19.pdf

DECLARATION OF RETIRED DEPUTY DIRECTOR EDWARD SWEENEY IN SUPPORT
OF DEFENSE SUPPLEMENTAL SENTENCING MEMORANDUM RE RESTITUTION

CASE NO.
3:21-CR-00453

<u>Individual Properties Audited</u>

11.     I have also personally examined public documents available for approximately eighty of the addresses listed in the Audit. Based on my review, it is my opinion that a large portion of the properties on the list should not have been re-inspected; they merited at most only a cursory review based on Mr. Curran's minor role in the projects. Also, the hours claimed for Audit review seem significantly inflated. I am highly familiar with the information available to personnel at DBI and the DBI database. Using the database simply requires the entry of an address in San Francisco then clicking on a button, this click brings you to a 'dashboard' screen called a "Permit Details Report" many of which are appended to this Declaration. On the first page of this report the complete permit history of the property can be viewed in a matter of seconds, including a list of all special inspections. In my own review of properties audited by DBI in this investigation, I rarely spent more than 15-20 minutes to assess the complete permit and inspection history of a given property, and to determine (on rare occasion) if the property needed follow-up. I have reviewed the 16-question "DBI Address Audit" application "App" used by DBI personnel in this case. I know that the relevant information requested in that App is readily available through this dashboard. I cannot understand why DBI personnel listed multiple hours to do this straightforward "Audit Research."

12.     One example of this inflation is the Audit review of a 2016 project to add a unit at 2135 California Street. Attached as Exhibit 3 is a two-page printout for that project from DBI's Permit Tracking System which is available to the public. The Exhibit documents that fourteen inspections were conducted on the property during seven field visits by five different DBI inspectors and a special (or private third-party) inspector. The inspections occurred between October 12, 2017, and June 27, 2018. Mr. Curran performed the first of those fourteen inspections on October 12, 2017, when he examined the "Reinforcing Steel" commonly known as 're-bar.' After that, the following inspections were made by other DBI personnel, "Rough Frame" (on November 16, 2017, November 17, 2017, and January 8, 2018); "Insulation" (on January 9, 2018); "Sheetrock Nailing" (on January 19, 2018); and "Final Inspection/Approved" (on June 27, 2018). Also, a special inspector separately reviewed "Fenestration Installation (windows), "Insulation Installation," "Whole House Fan," "Hot Water System Distribution," "Duct Leakage Diagnostic(s)," "Lighting – Multi Family Dwelling," and a

- 5 -

second "Duct Leakage Diagnostic Test (all signed off on by yest another DBI Inspector, on June 12, 2-18). In my opinion, the Audit review of this property should have taken a matter of minutes at a computer screen since Mr. Curran's initial (and straightforward) inspection was followed by thirteen others done by separate people including a final by a different DBI Inspector. Certainly, any grave misconduct by Mr. Curran would have been spotted. Instead, the Audit charges Mr. Curran 7.5 hours of time by three different auditors: 1) Trevor Byrne - .5hrs of "Audit Research;" 2) Edward Donnelly - 2.5hrs "Audit Research," and 3) Fergal Clancy - 4.5hrs "Inspection Quality Control Office." What is especially confounding about these hours is that the re-bar which was inspected by Mr. Curran on this project 6 years ago has long since been covered over by concrete, making it difficult if not impossible to inspect. I struggle to imagine what took the Audit Team almost a full day of work to review this property.

13.      A similar example of potential Audit abuse can be found in DBI's review of 2433 Franklin Street, a 2015 'soft-story' seismic retrofit. On that project, Mr. Curran again performed another single, initial "Reinforcing Steel" inspection on January 20, 2016. (*See* DBI Permit Detail Report attached as Exhibit 4). Thereafter, eleven more inspections were conducted on the same project by other DBI and special inspectors including: "Concrete (Placement & Sampling)," "Bolts Installed in Concrete," "Reinforcing Steel and Pretressing Tendons[3]," "Single Pass Fillet Welds," "Moment Resisting Frames," "Wood Framing," "Bolts Installed in Existing Concrete," "Sheer Walls and Floor Systems Used As Sheer Diaphragms," "Holdowns," and "Foundations." The final inspection approval was issued by another DBI inspector on August 16, 2017. Given Mr. Curran's minor role, the fact that his work is now covered in concrete, and that most of the serious system reviews were performed by independent 3rd-party inspectors, this review in my opinion should have taken 15-20 minutes. Instead, Mr. Curran was charged for 3 hours of "Audit Research" by Trevor Byrne.

14.      On June 15, 2018, Mr. Curran performed another "Reinforce Steel" inspection on 4466 24th Street. That was the only inspection Mr. Curran conducted on the building. Thereafter, fourteen other inspections were conducted by four other DBI inspectors, followed by twenty-six special

---

[3]In effect inspecting the same re-bar that was the subject of Mr. Curran's inspection.

DECLARATION OF RETIRED DEPUTY DIRECTOR EDWARD SWEENEY IN SUPPORT          CASE NO.
OF DEFENSE SUPPLEMENTAL SENTENCING MEMORANDUM RE RESTITUTION          3:21-CR-00453

inspections conducted by a third-party inspector or inspectors. (See DBI Permit Appeals Report attached as Exhibit 5). Mr. Curran was charged another 6.5 hours by the Audit Team (2.5hrs "Audit Research" Trevor Bryne, 4hrs "Audit Research" by Fergal Clancy). My own audit of this property took 20 minutes.

15.     Mr. Curran was also charged for demolition projects where no construction was conducted. On November 8, 2018, he inspected the demolition of a one-story "car renter facility" located at 241 10th Street. A new building was later built on the site which was inspected by another DBI Inspector on another permit. The cost of the demolition was listed as $40,000. (*See* Exhibit 6, DBI Permit Details Report). In my opinion demolition permits of this type should have incurred no Audit scrutiny based on the stated goals of the Audit. However, Mr. Curran was charged eight hours by DBI for this review (4 hours of "Audit Research" by Trevor Byrne, and 4 hours of "INSP Quality Control Office" by Fergal Clancy).

16.     Even work that Mr. Curran responded to on an emergency basis did not escape the Audit Team's purview. On December 20, 2017, Mr. Curran—assigned to the Emergency Response Team based on merit—responded to flooding at 2670 15th Street where he immediately issued and approved an emergency shoring permit to install a temporary wood beam in the building's garage to support an unsupported interior footing. (*See* Permit Details Report attached as Exhibit 7) Thereafter, private engineers took over the project and completed the work with no involvement of Mr. Curran. For that one act on the project—supervising the installation of an emergency (and temporary) beam to support a failing structure—Mr. Curran was charged with two hours of "Audit Research" by Trevor Byrne.

17.     Also, and as noted, the apparent fundamental motivation for the Audit—that buildings in San Francisco are unsafe based on actions taken by Mr. Curran—is flawed. First and most importantly, during my twenty-one-year career at DBI which almost entirely overlapped Mr. Curran's time in the Department, I never heard previously of an instance where his technical expertise nor integrity regarding permit issuance was questioned as corrupt. Further, the idea that a Senior Building Inspector on his own is solely responsible for the safety of a particular project or building is not accurate. As highlighted above, on most City building projects, there are a large number of personnel

outside of DBI who are involved in the inspection of buildings, including plumbing and electrical inspectors, SF Fire Department inspectors, DPW inspectors, engineers of record, architects of record (AOR), and PG&E inspections (when power is connected or when gas or electrical meters are installed). There are also third-party inspectors referred to as 'special inspectors' who provide inspections and test key structural elements of buildings undergoing mid-to-large renovations typical of the projects Rodrigo Santos worked on. For instance, special inspectors checking an engineer's work would test the strength of concrete used with a 28-day pressurized break test, and a pull test of all poured-in-place bolts and hold-downs.

18.     Beyond special inspections, any work in San Francisco that is structural in nature will require an engineer of record. This engineer is licensed by the state of California, and he is responsible for designing plans that conform to California Building Code Standards and the SF amendments. Their plans are submitted to the DBI Division of Plan Check for review and approval. After gaining approval from DBI Plan Check, these plans must be reviewed by the San Francisco Department of Public Works for sidewalk and street specifications; the SF Fire Department for exits, fire ratings, dampers, fire construction, standpipes, and sprinklers; and the California PUC for proposed water usage. All of these inspections are conducted by inspectors who must physically and personally walk the building and assess building system compliance with the relevant California Building Code. They then sign off on a physical paper job card. A Senior DBI Building inspector is not responsible for conducting these inspections or acquiring these necessary signatures on the job card; he or she simply checks that all of the appropriate signatures have been placed on the job cards.

Notices of Violation

19.     The DBI recently disclosed twenty-four "Notice[s] of Violation" ("NOVs" or "Notices") issued as a result of the Audit. DBI generally issues NOVs on a daily basis with approximately seventy issued per month. These notices stem typically from a homeowner exceeding the scope of a permit, work being done without permit at all, or a mistake being made in the permitting or inspection process. I have personally reviewed the NOVs at issue in this case; a summary list of them prepared for this Declaration is attached as Exhibit 8. Only eleven of the twenty-four NOVS involve inspections performed by Mr. Curran, the other thirteen were apparently associated to Mr.

- 8 -

1    Santos. The eleven NOVs attributed to Mr. Curran spanned a period of sixteen years, not even a rate of

2    one per year. Finding only eleven violations during a (now) 22-month audit from the tens of thousands

3    of inspections performed by Mr. Curran is itself significant. As I've stated previously, mistakes by

4    inspectors are common and are made in almost every job.

5        20.    The lack of severity of the NOVs found during the audit are just as significant as their

6    rarity. None of the violations warranted a "Red Tag" where a property is deemed unsafe for habitation

7    or involved a serious structural issue. A sampling of specific violations cited in the Notices will be

8    discussed below. Further, it is difficult to determine when the violations cited in the NOVs occurred;

9    that is, did the misplacement of a sidewalk planter box cited in one of the Notices against Mr. Curran

10   occur before or after his inspection? It is extremely common in my experience for homeowners in San

11   Francisco to perform unpermitted work on their property after a DBI permit inspection has been

12   completed. That is why a retroactive inspection and NOV is potentially misleading because it fails to

13   account for intervening causes.

14       21.    One of the NOVs against Mr. Curran involves a 2017 upgrade to a townhouse property

15   located at 267 Hartford Street. The work involved the addition of a large horizontal and vertical

16   expansion of the property including excavation. The NOV alleged that front planters (See picture from

17   NOV attached as Exhibit 9), were misplaced on the sidewalk, (non-permeable) concrete had been

18   poured on the driveway, and a decorative transom window over the front door had not been installed.

19   Even assuming these minor conditions existed six years ago when Mr. Curran visited the property,

20   they do not in my mind negatively impact the safety of San Franciscans, the stated purpose of the

21   Audit.

22       22.    Another of the NOVs involved a 2006 permit application at 794 Andover Street "To

23   Erect Three-Story Two-Family Dwelling." The original plans for the construction called for two non-

24   operable windows to be installed on the West-facing property line. The NOV states in 2023 there are

25   now operable windows in that location. Mr. Curran visited the property once to issue a 'Final;'

26   preceding his final were six other DBI inspections, separate electrical, plumbing, and SFFD

27   inspections, and 12 special inspections. Seventeen years after the fact it is difficult if not impossible to

28   know if these operable windows were

1   inserted during the original renovation or after. Regardless of which conclusion is drawn regarding the

2   date of their insertion, this seems to be a minimal violation which does not seriously impact the safety

3   of San Franciscans.

4       Conclusion

5       23.     Based on my expertise and 21 years in DBI (14 as Deputy Director) I can say that the

6   time estimates for review as included in the Audit are artificially high and unwarranted. Also, as Mr.

7   Curran's direct supervisor during the relevant time period of the investigation, it was Mr. O'Riordan's

8   job as Chief of the Building Inspection Division to review the work product of his four senior

9   inspectors (including Mr. Curran) on a daily basis to make sure it was compliant with Department

10  procedure. I am informed and believe that Mr. O'Riordan conducted these reviews and routinely gave

11  Mr. Curran positive assessments for his work. The fact that DBI is now attempting to charge Mr.

12  Curran for the re-review of his work that was (or should have been) routinely assessed by Mr.

13  O'Riordan himself is unfair.

14

15       I declare under penalty of perjury under the laws of the United States of America that the

16  foregoing is true and correct.

17       Executed this _4TH_ day of October 2023 at _San Francisco_, California.

18

19                                                          _Edward Sweeney_ (signature)

20                                                          Edward Sweeney

21

22

23

24

25

26

27

28

- 10 -

DECLARATION OF RETIRED DEPUTY DIRECTOR EDWARD SWEENEY IN SUPPORT          CASE NO.
OF DEFENSE SUPPLEMENTAL SENTENCING MEMORANDUM RE RESTITUTION              3:21-CR-00453

# EXHIBIT 1



**City and County of San Francisco**
**Department of Building Inspection**

**London N. Breed, Mayor**
**Patrick O'Riordan, C.B.O., Director**

March 17, 2023

The Honorable Susan Illston
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom One, 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *United States of America v. Bernard Curran*
             Case No. 3:21-cr-00453-SI-1

Dear Judge Illston:

As the Director for the Department of Building Inspection for the City and County of San Francisco ("DBI"), and pursuant to 18 U.S.C. § 3771, I submit this victim impact statement in support of DBI in advance of the sentencing of Defendant Bernard Curran ("Curran") in the above-referenced action on March 31, 2023.

In August 2020, when DBI became aware of Curran's illegal acceptance of financial benefits from Rodrigo Santos ("Santos"), his clients, as well as a developer, DBI began its investigation of Curran and the projects he signed off on. Prior to the investigation, DBI was already aware that Senior Building Inspector Curran had, at times, performed plan review and field inspections on a citywide basis outside of his assigned district, which was irregular. The responsibilities of a Senior Building Inspector are more significant than those of a Building Inspector because they handle more difficult and complicated programs or projects, and supervise a group of building inspectors or subordinate staff whose primary functions are plan review, site inspections, and/or code enforcement. The purpose of site inspections is to verify that construction work has been completed according to the approved permits and plans, and ultimately, to ensure the safety of the occupants residing or working in the structures. DBI discovered that, on several occasions, Curran acted outside the scope of his official responsibilities in exchange for a financial benefit to himself or others. Curran's illegal conduct called into question the integrity of his other inspections, as well as DBI's quality control over the permit and inspection review process.

As a result, DBI began conducting an Internal Quality Control Audit ("Audit") in March 2021 to identify violations resulting from Curran's public integrity breaches. To perform this thorough review of records for the Audit, including determining the scope and extent of Santos and Curran projects, DBI dedicated a team of thirteen full-time building inspectors and administrative personnel. The Audit team members searched DBI's own data and records for evidence of: revision permits; insufficient plan checks; permits requiring special scrutiny (e.g., excavation, structural, seismic, sprinklers on separate permits, etc.); slope protection reviews; missing trade permits; missing inspections; missing special inspections; missing addenda; and complaints not investigated. The Audit is not a project ordinarily undertaken by DBI staff in their normal course of responsibilities, and was only made necessary by Curran's illegal acts.

DBI also collaborated with the San Francisco City Attorney's Office to determine Audit criteria, identify projects associated with Santos and/or Curran, and identify properties for follow-up with visual inspections. The Audit team identified a total of 5,445 projects separated into three tiers: Tier 1 includes

properties where both Santos and Curran were involved in the engineering and inspection of a project (119 properties); Tier 2 includes properties where either Santos or Curran was involved in the development of a project located within a steep slope or seismic hazard zone (158 properties); and Tier 3 includes properties associated with either Santos or Curran outside of the slope and seismic hazard zones (5,168 properties).

The Audit is ongoing. To date, the Audit team has spent 3,408.50 hours in their review of 1,072 properties in Tier 1, Tier 2, and a portion of Tier 3. This translates to $335,391.94 in costs to DBI (based on Table 1-D of § 110A of the San Francisco Building Code, a copy of which is attached hereto). The Audit time is inclusive of review time of approved plans, special inspections, and histories of permits and inspections to identify potential issues; it also includes time spent to create a follow-up action plan to rectify any potential issues, outreach to property owners, and close-out of the property review.

One way to calculate the total Audit costs to date (i.e., $335,391.94) attributable to Curran is to multiply this past cost by the percentage of properties in the entire Audit that Curran worked on. Out of the 5,445 properties in the Audit, there are 2,961.5 Curran properties (i.e., one half of the 119 properties in Tier 1, or 59.5 properties + 56 properties in Tier 2 + 2,846 properties in Tier 3), which represents 54.3 percent of the total. Accordingly, Curran's share of the past Audit costs is $182,117.82.

But this sum does not include the number of hours and costs DBI anticipates spending in the future to review the remaining properties in Tier 3. Based on the 18 months taken to review 1,072 properties, we approximate that it will take another 3-4 years to complete the Audit through the close-out phase for the remaining Tier 3 properties. We prioritized Tier 1, which involved properties with potentially higher risk given Curran's and Santos' public integrity breaches, and Tier 2 properties in slope protection areas which may have higher potential risk for a life-safety hazard issue. Tier 3 is a catch-all Tier for the remaining properties, but this does not mean that it will take less time to review. It is dependent on what issues, if any, DBI finds in each property; in DBI's experience, this varies from address to address.

Out of the total of 5,168 properties in Tier 3, there are 2,846 related to Curran; the remainder are related to Santos. One way to estimate the future cost to review the Curran-only properties would be to calculate the past cost of the Audit on a per property basis. If you divide the total cost to date ($335,391.94) by the total amount of properties reviewed (1,072), then the average cost per property is $312.87. If you multiply that figure by 2,659 (the current number of Tier 3 Curran properties to be reviewed), then the expected future cost to DBI due to Curran's conduct would be $831,921.33, which would cover reviewing properties, administrative costs, inspector costs, identifying potential issues, follow-up plan review, and conducting visual inspections.

These past and future costs are separate and apart from the legal and investigative fees that DBI has incurred for the services of the San Francisco City Attorney's Office related to the pending San Francisco Superior Court civil case against Defendant Curran and others.

In summary, DBI submits this victim impact statement requesting restitution in the amount of $1,014,039.15, which represents the sum of DBI's past Audit costs attributable to Curran ($182,117.82) and DBI's future Audit costs attributable to Curran ($831,921.33). By so doing, the Court may hold Defendant Curran responsible for the consequences suffered by DBI as a direct result of his wrongdoing. We thank the Court for this opportunity to be heard.

Sincerely,

Patrick O'Riordan, C.B.O.
Director

**OFFICE OF THE DIRECTOR**
49 South Van Ness Avenue, Suite 500 – San Francisco CA 94103
Office (628) 652-3500 – FAX (628) 652-3509
Email: Patrick.Oriordan@sfgov.org

# BUILDING CODE
## 2022 Edition

**The San Francisco Building Code is current through:**
[Includes legislation adopted by the Board of Supervisors through December 31, 2022, and Administrative Bulletins approved through December 31, 2022]



**Copyright © 2023**
by
THE CITY AND COUNTY OF SAN FRANCISCO
A Municipal Corporation

**All rights reserved.** No part of this publication may be reproduced or distributed by any means or stored in a database or retrieval system without prior written permission of the City and County of San Francisco.

CA > San Francisco > San Francisco Build... > SECTION 110A - SCHEDULE OF FEE TABLES     

**SECTION 110A – SCHEDULE OF FEE TABLES**    

\* \* \*

### TABLE 1A-D – STANDARD HOURLY RATES

1. Plan Review    $173.91 per hour

2. Inspection    $158.10 per hour, $167.40 per hour for OSHPD inspection

3. Administration   $96.72 per hour, with a minimum charge of $48.36 for 30 minutes or less

# EXHIBIT 2

*** PRIVILEGED AND CONFIDENTIAL ***

## Internal Audit Time / Cost Calculations

| Name | Classification | Title | Audit Role | Time (In Hours) | Hourly Rate FY 2022 | Cost |
|---|---|---|---|---|---|---|
| | | | Audit Inspection Team | | | |
| Fergal Clancy | 6331 | Building Inspector | Audit Review and Follow-Up | 1,389.25 | $ 97.63 | $135,632.48 |
| Trevor Byrne | 6331 | Building Inspector | Audit Review and Follow-Up | 1,545.50 | $ 96.59 | $149,279.85 |
| Edward Donnelly* | 6333 | Senior Building Inspector | Audit Review | 237.50 | $ 103.35 | $24,545.63 |
| Joe Pena* | 6331 | Building Inspector | Audit Review | 434.50 | $ 87.50 | $38,018.75 |
| Brett Howard* | 6333 | Senior Building Inspector | Audit Review | 74.00 | $ 108.27 | $8,011.98 |
| | | **TOTAL** | | 3,680.75 | | $355,488.68 |

*No longer working on audit

| Name | Classification | Title | Audit Role | Time (In Hours) | Hourly Rate | Cost |
|---|---|---|---|---|---|---|
| | | | Admin / Data / MIS / Management | | | |
| Christine Gasparac | 0941 | Assistant Director | Executive Management Oversight | 99.00 | $ 127.47 | $12,619.53 |
| Joseph Duffy* | 0953 | Deputy Director of Inspection Services | Inspection Services management and coordination | 132.00 | $ 136.84 | $18,062.88 |
| Matthew Greene** | 6334 | Acting Deputy Director of Inspection Services | Inspection Services management and coordination | 12.00 | $ 119.93 | |
| Christopher Vergara** | 0923 | Compliance Manager | Project management to facilitate audit progress | 130.00 | $ 113.26 | $14,723.80 |
| Megan Wall Shui | 1824 | Principal Data Analyst | Development of audit tools and reporting sytems, data analysis, etc. | 210.00 | $ 95.67 | $20,090.70 |
| Mark Langan | 1053 | IS Senior Business Analyst | Development of Audit Tools / systems | 100.00 | $ 94.87 | $9,487.00 |
| Kevin Edwards | 1043 | IS Senior Engineer | Development of Audit Tools / systems | 30.00 | $ 107.52 | $3,225.60 |
| Jenny Zhan | 1053 | IS Business Analyst | Development of Audit Tools / systems | 161.00 | $ 97.11 | $15,634.71 |
| Josie Racelis | 1203 | Personnel Tech | Administrative Support | 2.00 | $ 67.16 | $134.32 |
| Sarah Luu* | 1823 | Senior Admin Analyst | Administrative Support | 88.00 | $ 84.35 | $7,422.80 |
| | | **TOTAL** | | 964.00 | | $101,401.34 |

*No longer working on audit
** FY2023 Rate

| | | | **GRAND TOTAL** | 4,644.75 | — | $456,890.02 |

EXHIBIT 3

**All information not in RED is from SFDBI Online Public Permit Tracking System.**

| | |
|---|---|
| Application Number: | 201610311558 |
| Address(es): | 0651 / 023 / 1    2135    CALIFORNIA                    ST |
| Description: | ADD UNIT PER ORDINANCE NO# 162-16. CONVERT (E) UNCONDITIONED UTILITY / STORAGE AREA & PORTION OF (E) LIGHTWELL INTO NEW 2201 SF ACCESSORY DWELLING UNIT. |
| Cost: | $368,712.00 |
| Occupancy Code: | R-2 |
| Building Use: | 24 - APARTMENTS |

**Inspections:** *(Inspection history from DBIs permit tracking system which shows 3 inspections per "page")*

| Activity Date | Inspector | Inspection Description | Inspection Status |
|---|---|---|---|
| 6/27/2018 | Jeffrey Barnes | FINAL INSPECT/APPRVD | CFC ISSUED |
| 1/19/2018 | Darlene Hartley | SHEETROCK NAILING | SHEETROCK NAILING |
| 1/9/2018 | Brett Howard | INSULATION | INSULATION |
| 1 2 3    (page 1) | | | |

Inspections:

| Activity Date | Inspector | Inspection Description | Inspection Status |
|---|---|---|---|
| 1/8/2018 | Brett Howard | ROUGH FRAME | ROUGH FRAME |
| 11/17/2017 | Kenneth Gonzalez | ROUGH FRAME | ROUGH FRAME, PARTIAL |
| 11/16/2017 | Kenneth Gonzalez | ROUGH FRAME | REINFORCING STEEL |
| 1 2 3    (page 2) | | | |

Inspections:

| Activity Date | Inspector | Inspection Description | Inspection Status |
|---|---|---|---|
| 10/12/2017 | Bernard Curran | REINFORCING STEEL | REINFORCING STEEL |
| 1 2 3    (page 3) | | | |

**7 field Building Inspections performed by 5 different DBI Inspectors**

**14% of field Building inspections performed by Bernard Curran**

**86% of field inspections performed by other DBI Inspectors**

**0% of electrical and plumbing inspections performed by Bernard Curran**

**2135 California street Permit 201610311558 Special Inspections:**

| Addenda No. | Completed Date | Inspected By | Inspection Code | Description | Remarks |
|---|---|---|---|---|---|
| 0 | 6/12/2018 | SHAJNAL | IB1 | CF2R-ENV-01-E - FENESTRATION INSTALLATION | |
| 0 | 6/12/2018 | SHAJNAL | IB3 | CF2R-ENV-03-E - INSULATION INSTALLATION | |
| 0 | 6/12/2018 | SHAJNAL | IB13 | CF2R-MCH-02-E - WHOLE HOUSE FAN | |
| 0 | 6/12/2018 | SHAJNAL | IP5 | CF2R-PLB-02-E - SINGLE DWELLING UNIT HOT WATER SYSTEM DISTRIBUTION | |
| 0 | 6/12/2018 | SHAJNAL | VB49 | CF3R-MCH-20-H - DUCT LEAKAGE DIAGNOSTIC TEST | |
| 0 | 6/12/2018 | SHAJNAL | IE2 | CF2R-LTG-02-E - LIGHTING - MULTI FAMILY DWELLINGS | |
| 0 | 6/12/2018 | SHAJNAL | IB58 | CF2R-MCH-20-H - DUCT LEAKAGE DIAGNOSTIC TEST | |

O% of special inspections performed by Bernard Curran

O% of special inspections reviewed and approved by Bernard Curran

100% of special inspections performed by third party

100% of special inspections approved by other DBI Inspectors

DBI Audit Date 11/3/22    4.5 Hours

# EXHIBIT 4

*Bernie [1 of 1 ], inspections*
*( rebar )*
*12 special inspections*

(H)

**Permit Details Report**

**Report Date:**    9/25/2023 12:07:39 PM

Application Number:    201508124069
Form Number:    8
Address(es):    0552 /005 /0    2433    FRANKLIN    ST
Description:    soft story retrofit - install shear walls & one new moment frame per ord. per sfbc chapter 34.
Cost:    $75,000.00
Occupancy Code:    R-2
Building Use:    24 - APARTMENTS

**Disposition / Stage:**

| Action Date | Stage | Comments |
|---|---|---|
| 8/12/2015 | TRIAGE | |
| 8/12/2015 | FILING | |
| 8/12/2015 | FILED | |
| 11/3/2015 | APPROVED | |
| 11/3/2015 | ISSUED | |
| 8/26/2016 | COMPLETE | 3032598 CFC ISSUED |

**Contact Details:**
**Contractor Details:**

License Number:    684863
Name:    JOHN C. POLLARD
Company Name:    S F GARAGE COMPANY INC.
Address:    12 GOUGH ST * SAN FRANCISCO CA 94103-0000
Phone:    4158260606

**Addenda Details:**
**Description:**

| Step | Station | Rev# | Arrive | Start | In Hold | Out Hold | Finish | Checked By | Review Result | Hold Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | INTAKE | | 8/12/15 | 8/12/15 | | | 8/12/15 | CHAPMAN MARLA | | |
| 2 | BLDG | | 8/12/15 | 8/12/15 | | | 8/12/15 | YU CYRIL | | |
| 3 | SFFD | | 8/12/15 | 8/12/15 | | | 8/12/15 | NG ROGER | | reviewed no fire inspection required |
| 4 | CPB | | 11/3/15 | 11/3/15 | | | 11/3/15 | YU ZHANG REN | | |

This permit has been issued. For information pertaining to this permit, please call 628-652-3450.

**Appointments:**

| Appointment Date | Appointment AM/PM | Appointment Code | Appointment Type | Description | Time Slots |
|---|---|---|---|---|---|
| 1/20/2016 | AM | WS | Web Scheduled | REINFORCING STEEL | 1 |

**Inspections:**

| Activity Date | Inspector | Inspection Description | Inspection Status |
|---|---|---|---|
| 8/26/2016 | Kevin Birmingham | FINAL INSPECT/APPRVD | CFC ISSUED |
| 1/20/2016 | Bernard Curran | REINFORCING STEEL | REINFORCING STEEL |

**Special Inspections:**

| Addenda No. | Completed Date | Inspected By | Inspection Code | Description | Remarks |
|---|---|---|---|---|---|
| 0 | 7/14/2016 | MGREENE | 1 | CONCRETE (PLACEMENT & SAMPLING) | |

| o | 7/14/2016 | MGREENE | 2 | BOLTS INSTALLED IN CONCRETE | |
| o | 7/14/2016 | MGREENE | 4 | REINFORCING STEEL AND PRETRESSING TENDONS | reinforcing steel |
| o | 7/14/2016 | MGREENE | 5A1 | SINGLE PASS FILLET WELDS < 5/16" | |
| o | 7/14/2016 | MGREENE | 5B5 | MOMENT-RESISTING FRAMES | |
| o | 7/14/2016 | MGREENE | 24E | WOOD FRAMING | |
| o | 7/14/2016 | MGREENE | 18A | BOLTS INSTALLED IN EXISTING CONCRETE | |
| o | 7/14/2016 | MGREENE | 19 | SHEAR WALLS AND FLOOR SYSTEMS USED AS SHEAR DIAPHRAGMS | |
| o | 7/14/2016 | MGREENE | 20 | HOLDOWNS | |
| o | 7/14/2016 | MGREENE | 24A | FOUNDATIONS | |
| 1 2 | | | | | |

For information, or to schedule an inspection, call 628-652-3400 between 8:30 am and 3:00 pm.

Station Code Descriptions and Phone Numbers

Online Permit and Complaint Tracking home page.

**Technical Support for Online Services**
If you need help or have a question about this service, please visit our FAQ area.

Contact SFGov  Accessibility    Policies
City and County of San Francisco © 2023

EXHIBIT 5

Department of Building Inspection

49

*Permit — Notice of Violations*
*26 special inspections 3rd party*
*plumbing, electrical & SFFD inspections*

9/24/23, 12:05 PM

**Permit Details Report**

**Report Date:** 9/24/2023 12:05:13 PM

| | |
|---|---|
| Application Number: | 201603293298 |
| Form Number: | 3 |
| Address(es): | 2828 / 016A / 0    4466    24TH    ST |
| Description: | CONVERT (E) 1-STORY OVER GARAGE SINGLE FMAILY HOME TO (2) UNITS. RENOVATE/EXPAND BLDG CONSIST OF (2) UNITS FROM BASEMENT TO 3RD FLOORS & (1) PARKING SPACE/UNIT. REMOVE (E) REAR WALL, HORIZONTAL EXPANSION INTO REAR YARD, VERTICAL EXPANSION OF (2) STORIES. |
| Cost: | $920,000.00 |
| Occupancy Code: | R-3 |
| Building Use: | 28 - 2 FAMILY DWELLING |

**Disposition / Stage:**

| Action Date | Stage | Comments |
|---|---|---|
| 3/29/2016 | TRIAGE | |
| 3/29/2016 | FILING | |
| 3/29/2016 | FILED | |
| 7/26/2017 | PLANCHECK | |
| 7/26/2017 | APPROVED | |
| 7/27/2017 | ISSUED | |
| 8/3/2017 | SUSPEND | Per BOA request. Appeal #17-130 |
| 10/11/2017 | REINSTATED | Per BOA email dd 2017-10-11, Appeal #17-130. |
| 8/6/2020 | COMPLETE | 5541358 CFC ISSUED |

**Contact Details:**

**Contractor Details:**

| | |
|---|---|
| License Number: | 730139 |
| Name: | JOSEPH PATRICK MOLLOY |
| Company Name: | SHAMROCK ENGINEERING CONCRETE |
| Address: | 6050 GEARY BL * SAN FRANCISCO CA 94121-0000 |
| Phone: | |

**Addenda Details:**

**Description:**
SITE.

| Step | Station | Rev# | Arrive | Start | In Hold | Out Hold | Finish | Checked By | Review Result | Hold Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CPB | | 4/4/16 | 4/4/16 | | | 4/4/16 | CHAN AMARIS | | |
| 2 | CP-ZOC | | 4/4/16 | 5/18/16 | | | 5/17/17 | KWIATKOWSKA NATALIA | | >5/17/17: Approved. Two-story vertical addition atop the existing two-story building, horizontal expansion of the existing floors at the rear, front façade changes, and the addition of a second dwelling unit to a two-story, single-family dwelling per DRA-0523 and Case 2015-014612DRP. |
| 3 | CP-NP | | 11/28/16 | 12/14/16 | 11/29/16 | 12/6/16 | 1/13/17 | KWIATKOWSKA NATALIA | | Mailed Cover Letter 11/29/16 (Vlad) Mailed 311 Notice 12/14/16; Expired 1/13/17 (Vlad) |
| 4 | CP-DR | | 1/12/17 | 1/12/17 | | | 5/17/17 | KWIATKOWSKA NATALIA | | |
| 5 | BLDG | | 5/18/17 | | 6/9/17 | 7/6/17 | 7/6/17 | ZHANG KAYI | | |

Department of Building Inspection                                                                                                                        9/24/23, 12:05 PM

| 8 | DPW-BSM | 7/6/17 | 7/18/17 | | | 7/18/17 | GAIME BERHANE | warped driveway sidewalk and railing. You can download the applications from www.sfpublicworks.org under permits and must submit in-person at 1155 Market Street, 3rd Floor. At the time of intake, the BSM plan checker may recommend for addendum sign off via email to the satellite office. If you have any questions about the applications, please call the main office at (415) 554-5810 and speak to a plan checker. |
| 9 | PPC | 7/6/17 | 7/6/17 | | | 7/18/17 | CHEUNG DEREK | 7/6/17: to BSM for restamp; dc 7/5/17: to Kayi Zhang for recheck;EC. 7/5/17: ! route plans to Kayi Zhang after PUC station returns plans;EC. 6/23/17: to PUC. mml 6/12/17: to BSM; dc 5/18/17: to BLDG; cp |
| 10 | CPB | 7/18/17 | 7/24/17 | | | 7/27/17 | TORRES SHIRLEY | 07/27/2017: ISSUED. ST 07/24/2017: school fees posted. need contractor ltr. approved. ST |

This permit has been issued. For information pertaining to this permit, please call 628-652-3450.

**Appointments:**

| Appointment Date | Appointment AM/PM | Appointment Code | Appointment Type | Description | Time Slots |
|---|---|---|---|---|---|
| 6/15/2018 | AM | WS | Web Scheduled | REINFORCING STEEL | 1 |

**Inspections:**

| Activity Date | Inspector | Inspection Description | Inspection Status |
|---|---|---|---|
| 8/6/2020 | Brett Howard | FINAL INSPECT/APPRVD | CFC ISSUED |
| 7/24/2020 | Brett Howard | PRE-FINAL | CORRECTION REQUIRED |
| 5/26/2020 | Jonathan Chiu | PRE-FINAL | REINSPECT REQUIRED |
| 1,2,3,4,5 | | | |

**Special Inspections:**

| Addenda No. | Completed Date | Inspected By | Inspection Code | Description | Remarks |
|---|---|---|---|---|---|
| 0 | 7/20/2020 | VZENG | IE1 | CF2R-LTG-01-E ¬ LIGHTING - SINGLE FAMILY DWELLINGS | |
| 0 | 7/20/2020 | VZENG | IP5 | CF2R-PLB-02-E - SINGLE DWELLING UNIT HOT WATER SYSTEM DISTRIBUTION | |
| 3 | 7/20/2020 | VZENG | IP5 | CF2R-PLB-02-E - SINGLE DWELLING UNIT HOT WATER SYSTEM DISTRIBUTION | |
| 3 | 7/20/2020 | VZENG | IE1 | CF2R-LTG-01-E - LIGHTING - SINGLE FAMILY DWELLINGS | |
| | | | | CF2R-MCH-27A-H - HERS MECH VENTILATION - | |

| | | | | | |
|---|---|---|---|---|---|
| 3 | 7/20/2020 | VZENG | IB28 | CONTINUOUS WHOLE BUILDING FAN VENT METHOD | Requires letter from a certified HERS rater. |
| 3 | 7/20/2020 | VZENG | IB3 | CF2R-ENV-03-E - INSULATION INSTALLATION | |
| 3 | 7/20/2020 | VZENG | IB1 | CF2R-ENV-01-E - FENESTRATION INSTALLATION | |
| 0 | 7/20/2020 | KBIRMING | 21A | SHORING | |
| 0 | 7/20/2020 | VZENG | IB28 | CF2R-MCH-27A-H - HERS MECH VENTILATION - CONTINUOUS WHOLE BUILDING FAN VENT METHOD | Requires letter from a certified HERS rater. |
| 0 | 7/20/2020 | VZENG | IB3 | CF2R-ENV-03-E - INSULATION INSTALLATION | |

**1 2 3**

For information, or to schedule an inspection, call 628-652-3400 between 8:30 am and 3:00 pm.

Station Code Descriptions and Phone Numbers

Online Permit and Complaint Tracking home page.

**Technical Support for Online Services**
If you need help or have a question about this service, please visit our FAQ area.

Contact SFGov  Accessibility    Policies
City and County of San Francisco © 2023

EXHIBIT 6

Department of Building Inspection

*[handwritten: 1 of 9]*

*[handwritten: Demolition permit of existing buildings.]*

**Permit Details Report**

**Report Date:**          9/25/2023 12:16:23 PM

| | |
|---|---|
| Application Number: | 201507020587 |
| Form Number: | 6 |
| Address(es): | 3518 / 020 / 0    241    10TH                ST |
| Description: | TO DEMOLISH 1 STORY CAR RENTER FACILITY. ** MAHER: COMPLIANCE WITH ORDINANCE NO# 155-13 REQUIRED; ROUTE TO DPH ** |
| Cost: | $40,000.00 |
| Occupancy Code: | |
| Building Use: | *[handwritten: New building built]* |

**Disposition / Stage:**

| Action Date | Stage | Comments |
|---|---|---|
| 7/2/2015 | TRIAGE | |
| 7/2/2015 | FILING | |
| 7/2/2015 | FILED | |
| 3/9/2016 | APPROVED | |
| 3/10/2016 | ISSUED | |
| 11/8/2018 | COMPLETE | 4284820 Final Inspection/Approved |

**Contact Details:**

**Contractor Details:**

| | |
|---|---|
| License Number: | 609169 |
| Name: | JOSEPH PATRICK CASSIDY |
| Company Name: | GRANITE EXCAVATION & DEMOLITION INC |
| Address: | 1300 EL CAMINO REAL STE 100 * COLMA CA 94014-0000 |
| Phone: | 6507378700 |

**Addenda Details:**

**Description:**

| Step | Station | Rev# | Arrive | Start | In Hold | Out Hold | Finish | Checked By | Review Result | Hold Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CPB | | 7/2/15 | 7/2/15 | | | 7/2/15 | CHAN AMARIS | | PLANS SHARE WITH PA# 2015/07/02/0587 & PA# 2015/07/02/0590. AMARIS. |
| 2 | CP-ZOC | | 7/3/15 | 12/9/15 | | | 12/9/15 | TOWNES CHRIS | | plans stamped/approved, routed. (ctownes) |
| 3 | BLDG | | 12/18/15 | 1/14/16 | 1/14/16 | 2/10/16 | 2/10/16 | CHEN MIN | | |
| 4 | DPW-BSM | | 2/24/16 | 3/1/16 | | | 3/1/16 | DENNIS RASSENDYLL | | Approved. 3/1/16: DPW/BSM sign off on Job Card required prior to DBI final. Subject to all conditions of DPW/BSM: #15IE-0801, 15MSE-0675 and BUF tree shown on A1.0. Contact Urban Forestry to apply for new tree(s) permit and landscape permit @ 415-554-6700. -RD |
| 5 | HEALTH | | 2/2/16 | 2/2/16 | | | 2/2/16 | CUSHING STEPHANIE | | |
| 6 | PPC | | 3/3/16 | 3/3/16 | | | 3/3/16 | HICKEY TIMOTHY | | 3/4/16: QC'd to CPB ; TH. 3/3/16: Bundled w/ 2015 0615 9021;EC. 2/24/16: to BSM (with 2 demo appl); snt. 2/22/16: to PUC (with 2 demo applications); snt. 2/2/16: traveled with -9021, -0590 to MIN |

Department of Building Inspection

9/25/23, 12:16 PM

| | | | | | | | | | | CHEN; snt. 1/14/16: In #21 hold bin;EC. 12/18/15: Application 2015 0615 9021 travel w/ 2015 0702 0590 and 2015 0702 0587;EC. 7/3/15: TO CP-ZOC;EC. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 | CPB | | 3/4/16 | 3/9/16 | | | | 3/10/16 | CHEUNG WAI FONG | 3/7/16: DDRP & J NUMBER REQUIRE. APPROVED. WF |

This permit has been issued. For information pertaining to this permit, please call 628-652-3450.

**Appointments:**

| Appointment Date | Appointment AM/PM | Appointment Code | Appointment Type | Description | Time Slots |
|---|---|---|---|---|---|
| 11/8/2018 | AM | WS | Web Scheduled | FINAL INSPECT/APPRVD | 1 |

**Inspections:**

| Activity Date | Inspector | Inspection Description | Inspection Status |
|---|---|---|---|
| 11/8/2018 | Bernard Curran | FINAL INSPECT/APPRVD | FINAL INSPECT/APPRVD |

**Special Inspections:**

| Addenda No. | Completed Date | Inspected By | Inspection Code | Description | Remarks |
|---|---|---|---|---|---|

For information, or to schedule an inspection, call 628-652-3400 between 8:30 am and 3:00 pm.

Station Code Descriptions and Phone Numbers

Online Permit and Complaint Tracking home page.

**Technical Support for Online Services**
If you need help or have a question about this service, please visit our FAQ area.

Contact SFGov   Accessibility    Policies
City and County of San Francisco © 2023

EXHIBIT 7

Department of Building Inspection

*(handwritten)* Bernie did all inspection whenever this was an emergency permit. All work done was under the direction of 2 private engineers. Flood

*(handwritten circled)* 17

**Permit Details Report**

**Report Date:**    9/25/2023 11:04:46 AM

| | |
|---|---|
| Application Number: | 201303081778 |
| Form Number: | 8 |
| Address(es): | 2482 / 012 / 0   2670   15TH        AV |
| Description: | EMERGENVCY SHORING PERMIT - INSTALL TEMPORARY WOOD BEAM AT 1ST FLOOR LEVEL (GARAGE) DOWN CENTER OF GARAGE TO PICK UP UNSUPPORTED INTERIOR FOOTING. WOOD MANUF BEAM BOLTED TO 4 POST, PER NOV #201389722. |
| Cost: | $2,000.00 |
| Occupancy Code: | R-3 |
| Building Use: | 27 - 1 FAMILY DWELLING |

**Disposition / Stage:**

| Action Date | Stage | Comments |
|---|---|---|
| 3/8/2013 | TRIAGE | |
| 3/8/2013 | FILING | |
| 3/8/2013 | FILED | |
| 3/8/2013 | APPROVED | |
| 3/8/2013 | ISSUED | |
| 12/20/2017 | COMPLETE | 3607974 Final Inspection/Approved |

**Contact Details:**

**Contractor Details:**

| | |
|---|---|
| License Number: | 938063 |
| Name: | DAVID RIVERA |
| Company Name: | NUCO DBA PREMIER CONSTRUCTION SERVICES |
| Address: | 2121 DIAMOND BL * CONCORD CA 94520-0000 |
| Phone: | |

**Addenda Details:**

**Description:**

| Step | Station | Rev# | Arrive | Start | In Hold | Out Hold | Finish | Checked By | Review Result | Hold Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BID-INSP | | 3/4/13 | 3/4/13 | | | 3/4/13 | LOWREY DANIEL | | |
| 2 | BLDG | | 3/7/13 | 3/7/13 | | | 3/7/13 | GRIECO ANTHONY | | |
| 3 | BLDG | | 3/7/13 | 3/7/13 | | | 3/7/13 | LIU CHU | | |
| 4 | CPB | | 3/8/13 | 3/8/13 | | | 3/8/13 | YIP JANET | | |

This permit has been issued. For information pertaining to this permit, please call 628-652-3450.

**Appointments:**

| Appointment Date | Appointment AM/PM | Appointment Code | Appointment Type | Description | Time Slots |
|---|---|---|---|---|---|
| 12/20/2017 | AM | WS | Web Scheduled | FINAL INSPECT/APPRVD | 1 |

**Inspections:**

| Activity Date | Inspector | Inspection Description | Inspection Status |
|---|---|---|---|
| 12/20/2017 | Bernard Curran | FINAL INSPECT/APPRVD | FINAL INSPECT/APPRVD |

**Special Inspections:**

| Addenda No. | Completed Date | Inspected By | Inspection Code | Description | Remarks |
|---|---|---|---|---|---|

For information, or to schedule an inspection, call 628-652-3400 between 8:30 am and 3:00 pm.

EXHIBIT 8

## AUDIT NOV SUMMARY 24 total, 11 with Curran's Inspections

| NOV | Address | Permit # referenced on violation | Did inspector Curran inspect the project. |
|---|---|---|---|
| 202308681 | 112 27th street | 201312093701 | No |
| 202307723 | 1233 Connecticut Street | 201110136712 | No |
| 202307724 | 1251 Connecticut Street | 201110136712 | No |
| 202307676 | 1261 Connecticut Street | 201110136710 | No |
| 202307221 | 454 Joost Street | 200505192898 | No |
| 202307218 | 136 Marview | 3 Expired Permits | No |
| 202307024 | 1022 Cole street | 2 Expired Permits | No |
| 202307023 | 1223 44th avenue | 201707111453 | No |
| 202306395 | 1606 Jones Street | 201812067678 | No |
| 202305585 | 1270 Valencia Street | 200909187224 | No |
| 202304854 | 4434 17th Street | 201603172410 | No |
| 202309282 | 1011 shotwell Street | 201001215155 | No |
| 202309140 | 45 MCCoppin Street | 2 Permits | No |
| 202306387 | 156 12th Avenue | 200210159008 | YES |
| 202306400 | 41 Pueblo Street | 201801319997 | YES |
| 202308491 | 276 Hartford | 201706058491 | YES |
| 202307691 | 794  Andover | 2 Permits | YES |
| 202303040 | 2080 Bryant Street | None  on NOV | YES |
| 202305735 | 3756 22nd Street | 3 Expired Permits | YES |
| 202307000 | 69 pearl street | 201307091393 | YES |
| 202308807 | 1048 Fulton Street | None  on NOV | YES |
| 202308706 | 1488 Van Dyke Ave | 2 Permits | YES |
| 202305733 | 272 Hartford Street | 2 Permits | YES |
| 202303040 | 1432 Guerrero Street | 2015100270931 | YES |

EXHIBIT 9



276 Hartford St
San Francisco, California
Google Street View
Aug 2021   See more dates