Philip J. Kearney - 114978
   PKearney@mpbf.com
Thomas P. Mazzucco - 139758
   TMazzucco@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
580 California Street, Suite 1100
San Francisco, CA 94104-1001
Telephone:    (415) 788-1900
Facsimile:    (415) 393-8087

Attorneys for Defendant
BERNARD CURRAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BERNARD CURRAN,<br><br>　　　　　Defendants. | Case No.: 3:21-CR-00453-SI-1<br><br>**DEFENDANT BERNARD CURRAN'S SUPPLEMENTAL MEMORANDUM RE: RESTITUTION** |

## I.　INTRODUCTION

On November 2, 2023, the Court directed Mr. Curran to respond to a requested Government accounting ("Accounting") of DBI's past audit ("Audit") costs for properties worked on by both or either Mr. Santos and Mr. Curran during the relevant time period. The Government filed that Accounting on November 6, 2023. (Doc. 98). The Accounting seeks $140,552.49 of combined Tier 1-3 Audit costs from Mr. Curran. (*Id*. at 3).

Although Mr. Curran is highly appreciative of the Court's narrowing of the compensable scope of the Audit, it is apparent that DBI's cost calculations remain inflated and unjustifiable.

## II.　**THE AUDIT'S SCOPE AND IMPLEMENTATION REMAIN UNSUPPORTED**

As discussed during the November 2, 2023, restitution hearing ("Hearing"), the purpose of the

Audit was to address building safety in San Francisco, which was called into question by Mr. Curran's criminal conviction. However, the Audit has failed to uncover a single instance of unsafe conditions connected to any one of Mr. Curran's tens of thousands of inspections. Nor has corruption ever been affirmatively proven in connection with any of Mr. Curran's inspections. As such, the Audit—beyond its rational review of Tier 1 properties—is not justified by the offense conduct.

As further demonstrated during the Hearing, the hours assigned by unsupervised DBI inspectors were "significantly inflated." (Doc. 89-1 ¶ 11). Former DBI Deputy Director Edward Sweeney ("Mr. Sweeney"), who has 25 years of experience in San Francisco union carpentry and 21 years of experience at DBI, has stated under the penalty of perjury that some of the claimed time spent reviewing properties during the Audit was "confounding." (*Id.* at ¶ 12). As demonstrated during the Hearing, this may be because a sixteen-step audit process—apparently designed by attorneys—mandates without exception that all Audit steps be completed for all properties reviewed, regardless of Mr. Curran's level of involvement. As an example (and as discussed at the Hearing), Mr. Curran was charged for 7.5 hours of Auditor's time for an analysis of 2135 California Street which in Mr. Sweeney's estimation should have taken a "matter of minutes." (*Id.*). This was one of the vast number of properties where Mr. Curran performed only a brief initial "re-bar" inspection (which has long-been covered in concrete and is consequently unreviewable). Thereafter thirteen other inspections (including a final) were conducted by five other DBI or special inspectors. (*Id.*). In this one property alone and based on sworn evidence, Mr. Curran was over-charged by several hours.

Perhaps as stunning as this sworn testimony from Mr. Sweeney was the fact that it was effectively unrebutted. No DBI personnel with relevant building trade or inspection experience appeared before the Court during the restitution hearing. As such, this Court should find by convincing evidence that the Audit numbers are untrustworthy. Consequently, the Government has failed to prove that DBI's estimated per property cost of $312.87 is justified.

### III. RESTITUTION IS ONLY APPROPRIATE FOR TIER 1 PROPERTIES.

**A. Tier 1 Properties.**

On March 17, 2023, DBI Director Patrick O'Riordan ("Mr. O'Riordan") submit a victim impact statement to the Court explaining the need to audit Tier 1 properties, properties where both Mr. Curran

- 2 -
DEFENDANT BERNARD CURRAN'S SUPPLEMENTAL MEMORANDUM RE: RESTITUTION
CASE NO. 3:21-CR-00453-SI-1

and Rodrigo Santos ("Mr. Santos") were involved in the engineering and inspection of a project. Tier 1 originally included 119 properties, which was condensed to 81 properties assignable to Mr. Curran ($28,846.53 respectively) and 52 properties assignable to Mr. Santos ($18,518.76 respectively) for the limited date range in question. (Doc. 98 at p. 3). Restitution in connection with these Tier 1 properties sensibly follows the facts of this case and is agreeable to Mr. Curran.

**B.  Tier 2 and Tier 3 Properties.**

Mr. O'Riordan's victim impact statement further explained that Tier 2 properties were those where either Mr. Curran or Mr. Santos was involved in the development of a project located within a steep slope or seismic hazard zone (158 properties). Tier 3 properties were those where either Mr. Curran or Mr. Santos simply worked on a project outside of the slope or seismic hazard zones (5,168 properties).

Mr. O'Riordan alleges—without providing supporting evidence—that Tier 2 properties may have had a higher potential risk for a life-safety hazard because of their proximity to steep slopes or seismic hazard zones. However, this conclusion has been disproven by the Audit itself and the unrebutted sworn testimony of Mr. Sweeney who stated that these properties involved a "separate permit submittal process, checklist, and review committee, all under the supervision of a DBI Plan Review Engineer." (Doc. 89-1 ¶ 10). Consequently, and given his minimal role in their approval, Mr. Curran believes that the review cost of these Tier 2 properties should not be attributable to him.

The Tier 3 category of properties is both unsubstantiated and punishes Mr. Curran for his superior work ethic and competence. This catch-all category includes: (a) properties which Mr. Curran was specially assigned as part of DBI's Emergency Response Team; (b) properties in which other DBI Senior Inspectors sought Mr. Curran's help based on his expertise; and (c) many properties in which Mr. Curran simply answered the phone to help a customer facing a time crunch. Since Mr. Curran has not been proven to have acted corruptly in any of these situations, charges for Tier 3 review are not justified.

//

## IV. CONCLUSION

Mr. Currant contends that the Government has still fallen short of its burden to estimate the victim's losses with reasonable certainty. However, Mr. Curran concedes that an audit of Tier 1 properties was appropriately tailored to the facts of his case. As such, Mr. Curran respectfully suggests that the amount of $28,846.53—his share of audited Tier 1 properties—is appropriate as a grant of restitution in this matter.

Respectfully submitted,

Dated: November 10, 2023

MURPHY, PEARSON, BRADLEY & FEENEY

By ___/s/ Philip J. Kearney_____
   Philip J. Kearney
   Thomas P. Mazzucco
   Attorneys for Defendant
   BERNARD CURRAN

PJK.4751929